IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACOB K. PANOWICZ,<br><br>    Plaintiff,<br><br>vs.<br><br>CHARTER HEALTH HOLDINGS, INC. d/b/a CHARTER HOME HEALTH OF OMAHA;<br><br>CHARTER HEALTH CARE GROUP, LLC;<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiff, by and through his attorneys, and for his causes of action against the Defendant hereby states the following:

**PARTIES-VENUE-JURISDICTION**

1. Plaintiff JACOB K. PANOWICZ, is a resident of Omaha, Douglas County, Nebraska.

2. Defendant CHARTER HEALTH HOLDINGS, INC. d/b/a CHARTER HOME HEALTH OF OMAHA is a Delaware corporation conducting business in Nebraska providing home health services with its principal office located in Omaha, Douglas County, Nebraska.

3. Defendant CHARTER HEALTH CARE GROUP, LLC is a California corporation conducting business in Nebraska with its principal office located in Covina, California.

4. Upon information and belief of the Plaintiff, the named Defendants above employed Plaintiff in Omaha, Nebraska and were linked to the alleged retaliatory and illegal action taken against Plaintiff described more fully herein and/or were a parent company that sufficiently dominated its subsidiaries operations or controlled Plaintiff's employment that they are considered to be a joint employer.

1

5. This Court has subject matter jurisdiction over the claims arising under federal law pursuant to the provisions of 28 U.S.C. § 1331, and pendent supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. §1367.

6. Venue is appropriate in this District under 28 U.S.C. §§1391(b) and (c). Defendants either reside or do business in Douglas County and the acts about which Plaintiff complains occurred during the scope and course of his employment in Douglas County, Nebraska.

7. On October 25, 2022, less than 300 days prior to the offending conduct outlined in this Complaint, Plaintiff filed a charge of discrimination with the Nebraska Equal Opportunity Commission, NEB 2-22/23-10-53040-S.

## FACTUAL BACKGROUND

8. Plaintiff Jacob K. Panowicz (hereinafter referred to as "Panowicz") commenced employment with Defendants Charter Health Holdings, Inc. d/b/a Charter Home Health of Omaha (hereinafter referred to as "Defendant Charter Health") and Charter Health Care Group, LLC (hereinafter referred to as "Defendant CHCG") on or about February 2, 2021.

9. Panowicz was promoted to VP of Operations in or around July 2021 by CEO of Defendant Charter Health and Defendant CHCG, Steve Larkin.

10. On or about December 21, 2021, Certified Oasis Trainer Angie Venditte brought some irregularities in Defendant's data that she found during an audit to Panowicz's attention.

11. Between December 21, 2021 and January 10, 2021, Panowicz had at least 10 documented meetings with Venditte, several other California team members, and Larkin wherein Panowicz investigated and voiced concerns that Defendants' data irregularities were indicative of billing fraud for their Medicare, Medicaid and managed care patients in California.

12. During the December and January investigation period, Panowicz initially

discovered that there were over 2,000 instances of fraud in which required paperwork was not completed and services were not provided in cases in which Medicaid, Medicare and other private insurance companies were billed.

13. On or about January 7, 2022, Panowicz was informed by Venditte and members of Defendants' leadership team that the number of fraudulent claims submitted without being properly documented, services completed or fully performed was estimated to be as high as 10,000.

14. On or about January 7, 2022, Panowicz emailed Larkin and reported the findings. Panowicz advised he would update Larkin further after a meeting which was scheduled to occur in Omaha, between Larkin and Panowicz face to face on January 10, 2022. Larkin was traveling to Iowa for personal reasons and was going to stop in Omaha to go over first quarter projections and plans, identify where Panowicz will invest his time and energy in 2022, and generally review Panowicz's work for the previous year.

15. Panowicz met with Larkin on or about January 12, 2022. Larkin began the meeting by expressing how well Panowicz was doing in his role as VP of Operations, he informed him that he would receive his 25% bonus for 2021, and they made travel plans for Panowicz in the upcoming quarters.

16. The January 12, 2022 meeting then transitioned to a discussion of the fraudulent billing issues previously raised by Panowicz after the audit. Larkin asked Panowicz during this meeting to estimate Defendants' exposure to Medicare for overbilled or improperly billed sums. Panowicz responded by saying our team has calculated that there are at least 10,000, or more, incomplete charts and that if the billing average is a modest $1,500 per episode the total would be $15,000,000 on the start of care and OASIS completion issues only, and that the term covered by this estimate would only go back to the end of 2018. Panowicz also noted that because Defendants'

biggest managed care contract is with Kaiser Permanente, it was reasonable to predict an external audit that would examine at least the years 2020 and 2021, and that Charter would be caught in its non-compliance status soon. Panowicz further recommended employment of a group of external auditors to determine how extensive the noncompliance was, complete a risk assessment, and then bring the matter to the attention of government personnel to arrange repayment of the fraudulently obtained sums.

17. After expressing his opinion on how to handle the fraudulent billing and payment issues, Larkin immediately terminated Panowicz, stating that "this was not going to work."

18. Panowicz asked Larkin why he was telling him this after just discussing the strategy for the year, and why he did not have the termination paperwork prepared and there was no human resources' involvement. Larkin said he was not prepared to terminate Panowicz that day, and that "we are done Jake." Larkin took Panowicz's company phone and computer and left the meeting.

19. Prior to termination, Plaintiff's job performance was above satisfactory.

20. At the time of his termination, Plaintiff was earning approximately $284,000 in salary annually working over 40 hours per week, plus bonuses and fringe benefits. As of the date of this filing, Plaintiff's lost wages resulting from Defendant's wrongful conduct are in excess of $704,926.91, and unpaid wages of $71,150.00 for an earned annual bonus.

21. As a result of Defendants' wrongful conduct, Plaintiff suffered lost wages, compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorney's fees and other costs that are continuing.

## COUNT I

## WHISTLEBLOWER RETALIATION

### Neb. Rev. Stat. §48-1114(1)(c)

22. Plaintiff hereby incorporates paragraphs 1 through 21 as if fully set forth herein and states:

23. During his employment, Plaintiff engaged in protected activity, including but not limited to refusing to engage in and opposing billing fraud on Medicare, state Medicaid programs and private health insurers.

24. Defendant took adverse employment action against Plaintiff, including but not limited to terminating Plaintiff and other ways to be proven at trial.

25. There is a causal connection between Plaintiff's participation in protected whistleblower activity and Defendant's adverse action against him.

26. As a result of Defendant's retaliation, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay, other emoluments of employment and attorney's fees.

## COUNT II

## NEBRASKA WAGE PAYMENT AND COLLECTION ACT

### Neb. Rev. Stat. § 48-1229 et seq.

27. Plaintiff hereby incorporates paragraphs 1 through 26 as if fully set forth herein and states:

28. Defendant meets the definition of employer set forth in Neb. Rev. Stat. § 48-1229(1), and as an employer, Defendant is subject to, and is required to abide by, the provisions of the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228, et seq. (hereafter "NWPCA").

29. Plaintiff meets the definition of employee set forth in Neb. Rev. Stat. § 48-1229(2), and as an employee, Plaintiff is entitled to the benefits and protection of the NWPCA.

30. Plaintiff performed labor and services for Defendant for which he was not compensated for including his annual bonus for 2021.

31. Defendant willfully failed to pay Plaintiff his wages in violation of the NWPCA and it has been more than thirty (30) days since the regular payday designated by Defendant.

## COUNT III

## FALSE CLAIMS ACT ("FCA") WHISTLEBLOWER RETALIATION

### 31 U.S.C. § 3730(h)

32. Plaintiff hereby incorporates by reference paragraphs 1 through 31 and states:

33. During his employment, Plaintiff engaged in conduct protected by the FCA;

34. Defendant knew that Plaintiff engaged in the protected activity;

35. Defendant retaliated against Plaintiff, including subjecting him to termination;

36. Defendant's retaliation was motivated solely by Plaintiff's protected activity; and,

37. Plaintiff suffered damages resulting from Defendant's retaliation.

## DAMAGES

38. Plaintiff hereby incorporates by reference paragraphs 1 through 37 and states:

39. As a result of Defendants' illegal conduct, Plaintiff has suffered damages and seeks the following relief:

   a. Unpaid wages, including Plaintiff's earned bonus, under the NWPCA;

   b. Back pay and lost benefits from termination to the time of trial on Plaintiff's state law whistleblower retaliation claim;

  c. Double back pay and lost benefits from termination to the time of trial on Plaintiff's FCA whistleblower retaliation claim;

  d. Front pay including wages and other benefits;

  e. Tax gross up on economic damages to offset the increased tax on any economic damages award;

  f. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

  g. Attorney's fees, expert witness fees and other reasonable costs; and,

  h. Pre-judgment and post judgment interest.

 WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate him for his injuries and damages, for all his general and special for costs, attorney's fees, interest and for such other relief as just and equitable.

 Plaintiff demands a trial by jury.

 Dated: October 31, 2023.

                JACOB K. PANOWICZ, Plaintiff

            BY: s/ Jennifer Turco Meyer
               Jennifer Turco Meyer, #23760
               Of Dyer Law, P.C., LLO
               2611 S. 117th Street
               Omaha, Nebraska 68144
               (402) 393-7529
               (402) 391-2289 facsimile
               Jennifer@dyerlaw.com
               Attorney for Plaintiff