IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACOB K. PANOWICZ,<br><br>    Plaintiff,<br><br>  v.<br><br>CHARTER HEALTH HOLDINGS, INC.;<br>CHARTER HEALTH CARE GROUP, LLC;<br>PHAROS CAPITAL GROUP, LLC;<br>PHAROS CAPITAL PARTNERS III, LP;<br>PHAROS CAPITAL PARTNERS III-A, LP;<br>PHAROS CAPITAL PARTNERS GP III,<br>LLC; and PHAROS CAPITAL PARTNERS<br>GP III-A, LLC,<br><br>    Defendants. | 8:23CV483<br><br>MEMORANDUM<br>AND ORDER |

   This matter is before the Court on defendants Pharos Capital Group, LLC; Pharos Capital Partners III, LP; Pharos Capital Partners III-A, LP; Pharos Capital Partners GP III, LLC; and Pharos Capital Partners GP III-A, LLC's (together, "Pharos") Motion to Dismiss (Filing No. 43) plaintiff Jacob K. Panowicz's ("Panowicz") Amended Complaint (Filing No. 24) under Federal Rule of Civil Procedure 12(b)(6). Panowicz resists (Filing No. 56). For the reasons that follow, Pharos's motion to dismiss is granted.

**I. BACKGROUND**

   This case involves claims of retaliatory termination and lost wages stemming from alleged violations of the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1114(1)(c) (Count I); Nebraska Wage Payment and Collection Act ("NWPCA"), Neb. Rev. Stat. § 24-1229 *et seq.* (Count II); and the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h) (Count III). Pharos moved to dismiss Panowicz's amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In support of that motion, it has submitted a brief (Filing No. 45) with a copy of Panowicz's

employment letter (Filing No. 45-1). Pharos also submitted a copy of Panowicz's initial charge before the Nebraska Equal Opportunity Commission ("NEOC") (Filing No. 45-2). Panowicz likewise submitted an index of evidence (Filing No. 57). That index includes a declaration from Panowicz's counsel regarding the exhibits and NEOC proceedings (Filing No. 57-1), copies of "Pharos Capital Group Philosophy" (Filing No. 57-2), and Pharos's "SEC Investment Advisory Brochure" (Filing No. 57-3), both of which, counsel declares, appear on Pharos's "publicly available website."

As an initial matter, the Court ordinarily limits its review under Rule 12(b)(6) to the four corners of the complaint. *See* Fed. R. Civ. P. 12(d); *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007) (noting that "when matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment."). However, the Court may "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record" without converting the motion into a motion for summary judgment. *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081 (8th Cir. 2018) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).

After reviewing the evidentiary materials, the Court has determined that it would be premature to convert the motion to one for summary judgment under Rule 12(d). Thus, the Court will not consider Panowicz's counsel's declaration regarding testimony before the NEOC or the information from Pharos's website. However, the Court finds that the employment letter and NEOC charge do not contradict the complaint and are either embraced by the pleadings or matters of public record which may be considered along with the well-pleaded factual allegations in the amended complaint (Filing No. 24). What follows is a summary of Panowicz's allegations.

Pharos Capital Group, LLC is a private-equity firm that manages investment funds, including Pharos Capital Partners III, LP and Pharos Capital Partners III-A, LP (collectively, "Fund III"). The other Pharos defendants are general partners and entities

2

related to Pharos Capital Group, LLC and Fund III.  In 2018, Pharos acquired a majority interest in defendants Charter Health Holdings, Inc. d/b/a Charter Home Health of Omaha and Charter Health Care Group, LLC (together, "Charter").  When Pharos acquired this majority interest, it installed Pharos employee Steven J. Larkin ("Larkin") "as Chief Executive Officer of Defendant Charter."  According to Panowicz, Pharos "managed and controlled [Charter] as a portfolio company through [Larkin]" and three other Pharos partners who served on Charter's board of directors.

Panowicz is a resident of Omaha, Nebraska, and was the Chief Executive Officer ("CEO") of Physmed Home Health Care ("Physmed") and Serene Care Hospice ("Serene"), sister companies also located in Omaha.  In February 2021, Pharos and Charter (collectively, "defendants") acquired Physmed and Serene.  After this acquisition, Panowicz claims he "was hired by Defendants Charter and Pharos in the role of Vice President of Home Health" even though his employment letter and NEOC charge only names "Charter Health Holdings, Inc. d/b/a Charter Home Health of Omaha" as his employer.[1]  Beyond stating that he was employed by both Charter and Pharos, he does not offer any specifics to explain how he was hired by both defendants.  In July 2021, Larkin promoted Panowicz from Vice President of Home Health to Vice President of Operations.[2]

### A.   Alleged Integrated Enterprise

Although Panowicz's employment letter came from Charter, Panowicz states that Pharos was a parent company that "sufficiently dominated" Charter and controlled his employment to the extent that Pharos qualifies as a single, integrated enterprise or joint employer "in accordance with federal common law."  He alleges Pharos provided "ongoing support and counsel" to Charter through "active board participation" and by "working

---

[1] The employment letter states, "We are pleased to offer you the position with Physmed, Inc., a subsidiary of Charter Health Holdings, Inc."  The NEOC charge letter only lists Charter Health Holdings, Inc. and does not mention Physmed.

[2] Panowicz does not specify whether he served in this role for both defendants, or just Charter.

3

closely with management to formulate strategic plans[.]" He claims Pharos also "actively monitor[ed] performance through participation in the operational review process." Specifically, he alleges Pharos directed or approved "all significant operational and financial decisions Larkin made," including "decisions addressing compliance problems, including overpayments, potential acquisitions of other home health companies, and staffing or human resource decisions[.]" On more than one occasion, Larkin responded to Panowicz by telling him he would need to "run it by Pharos" or "the Board[.]" Larkin "routinely refer[red] to Pharos's decisions and reasoning during his meetings" with Charter's leadership team.

### B.     Alleged Whistleblower Retaliation

On December 21, 2021, Angie Venditte ("Venditte"),[3] uncovered several billing irregularities during an audit and brought them to Panowicz's attention.[4] Between December 21, 2021, and January 10, 2021, Panowicz met with Venditte, Larkin, and "several other California team members"[5] at least ten times. Panowicz claims that during these meetings he "investigated and voiced concerns" that the "data irregularities were indicative of billing fraud for their Medicare, Medicaid, and managed care patients in California." During this time, Panowicz discovered over two thousand cases in which required paperwork was missing and services were never provided, yet Medicare, Medicaid, and other insurers were still billed. Venditte and unnamed "members of the defendants' leadership team" informed Panowicz the actual number of these cases could be as high as ten thousand.

On January 7, 2022, Panowicz emailed Larkin to report these findings. Five days later, Larkin and Panowicz met in Omaha to go over first-quarter projections, review Panowicz's work from the previous year, and plan for the coming year. At the meeting,

---

[3]It is unclear for whom Venditte worked.
[4]It is not clear what Venditte was auditing or which entity the audit involved.
[5]Panowicz does not name the team members, nor does he state whether any of them were Charter or Pharos employees.

Larkin "expressed how well Panowicz was doing in his role" and told him he would receive a twenty-five percent bonus for his work from 2021.

The conversation then shifted to the billing irregularities. Larkin asked Panowicz to estimate "the [d]efendants' exposure to Medicare for overbilled or improperly billed sums." Panowicz estimated that even assuming a modest rate of $1,500 per incident, ten thousand incomplete charts would amount to roughly $15 million in potentially fraudulent claims. Panowicz also believed that, because of Charter's contract with Kaiser Permanente, external auditors would soon uncover its non-compliance. In Panowicz's view, Charter's best path forward was to hire external auditors to conduct a complete risk assessment and then alert the government "to arrange repayment of the fraudulently obtained sums."

Larkin found this suggestion to be untenable and terminated Panowicz on the spot, stating "this was not going to work." When Panowicz asked Larkin why, Larkin replied that "he was not prepared to terminate Panowicz that day" but "we are done [Panowicz]." Larkin then took Panowicz's company phone and computer. Panowicz maintains that his job performance was more than satisfactory before his termination.

On October 25, 2022, Panowicz filed a charge of discrimination with the NEOC based on whistleblower retaliation, alleging Charter terminated him because he "opposed [Charter's] unlawful activity." He then filed this action on October 31, 2023 (Filing No. 1), alleging Charter terminated him in retaliation for his concerns about "billing fraud on Medicare, state Medicaid programs, and private health insurers" in violation of the FCA and NFEPA. He also claimed Charter failed to pay him under the NWPCA.

On January 26, 2024, Charter filed a Petition for Bankruptcy in the United States Bankruptcy Court for the District of Delaware. On February 5, 2024, Charter filed a Suggestion of Bankruptcy (Filing No. 13). All proceedings against Charter were automatically stayed under 11 U.S.C. § 362(a) (Filing No. 15). According to Charter's

October 8, 2025, status report, some of the bankruptcy issues have been resolved, while others remain pending (Filing No. 63). Nearly a year after Charter filed for bankruptcy, Panowicz amended the complaint in this case with leave to add Pharos (Filing No. 24).

On April 18, 2025, Pharos moved to dismiss the claims against it under Rule 12(b)(6) for failure to state a claim (Filing No. 43). Panowicz responded on May 9, 2025 (Filing No. 56), and Pharos replied in support of its motion on May 16, 2025 (Filing No. 58).

Regarding the NFEPA claim, Pharos asserts it is time-barred and Panowicz has failed to properly exhaust his administrative remedies under NFEPA. *See* Neb. Rev. Stat. § 48-1120.01; *id.* § 48-1118(2). In a footnote, "[Panowicz] voluntarily dismisses" his NFEPA claim (Count I) against Pharos, without more (Filing No. 56 at 9). Thus, the Court will dismiss Count I as it relates to Pharos and consider the remaining arguments.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." It does not require Panowicz "plead 'specific facts' explaining precisely how the [Pharos's] conduct was unlawful." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam)). Panowicz must, however, set forth more than mere legal conclusions and a formal recitation of the elements of his causes of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In reviewing Pharos's motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and draws all reasonable inferences in favor of Panowicz. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To survive a motion

to dismiss, Panowicz must "state a claim to relief that is plausible on its face," meaning that he "pleads factual content that allows the [C]ourt to draw the reasonable inference that [Pharos] is liable for the misconduct alleged." *Id.* Plausibility requires "more than a sheer possibility that [Pharos] has acted unlawfully" or "a mere possibility of misconduct." *Id.* at 678-79.

### III.  DISCUSSION

First, Pharos argues that Panowicz's claims should be dismissed for failure to state a claim because he does not allege an employer-employee relationship with Pharos, which is a prerequisite under all three statutes. *See* Neb. Rev. Stat. § 48-1114(1)(c); *id.* § 48-1230(1); 31 U.S.C. 3730(h). Next, Pharos, argues that even if this Court finds Pharos qualifies as Panowicz's employer, he fails to allege sufficient facts to establish a NWPCA claim because his promised bonus does not qualify as wages. And finally, Pharos asserts Panowicz has failed to plead that Pharos was aware Panowicz engaged in protected activity in furtherance of an FCA action. The Court will address each argument in turn.

#### A.   Employer-Employee Relationship

According to Pharos, Panowicz's merely states a "legal conclusion that he 'was employed' by Pharos Capital." Without much support, Panowicz counters that (1) even if Pharos were not his employer, his FCA claim should not be dismissed because the FCA protects more than just employees and (2) Pharos also qualifies as his employer under an integrated-enterprise, joint-employer, or alter-ego theory.

##### 1.   The FCA's Coverage

The FCA imposes liability on "any person" who submits or causes a false claim to be submitted for payment to the federal government or makes or uses "a false record or statement" to support such a claim. 31 U.S.C. § 3729(a)(1). It also protects potential whistleblowers by providing a cause of action for "[a]ny employee, contractor, or agent" who is discharged "because of lawful acts done by the employee, contractor, agent or associated others in furtherance of [a civil action for false claims]" or in "efforts to stop"

7

one or more violations of the FCA.  31 U.S.C. § 3730(h)(1).  To establish retaliation in violation of the FCA, Panowicz must show that "(1) [he] was engaged in conduct protected by the FCA; (2) [Pharos] knew that [he] engaged in the protected activity; (3) [Pharos] retaliated against [him]; and (4) the retaliation was motivated solely by [his] protected activity."  *United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158, 1166-67 (8th Cir. 2019) (quoting *Schuhardt v. Washington Univ.*, 390 F.3d 563, 566 (8th Cir. 2004)).

Pointing out that the FCA covers more than employer-employee relationships, Panowicz emphasizes the "associated others" language in § 3730(h)(1) to assert that Pharos "had an 'employment-like' relationship" with him which, in his view, is enough to warrant protection under the FCA.  In support of this argument, Panowicz points to a district court case from Michigan and a Sixth Circuit case.  *See Ickes v. Nexcare Health Sys., LLC*, 178 F. Supp. 3d 578, 591-92 (E.D. Mich. 2016); *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1059 (6th Cir. 2014).

Pharos counters this is a "novel and legally unsupported" theory with "no foundation in statutory text or any controlling precedent."  In addition to being out of circuit, neither case lends much support to Panowicz's argument.  The plaintiff-employee in *Ickes* was a contractor providing services to the defendant-company, thus fitting squarely within the text of § 3730(h)(1).  178 F. Supp. 3d at 591.  And the court in *Vander Boegh* considered "whether the term 'employee' extended to applicants for employment" under the FCA and five other federal statutes.  772 F.3d at 1059.  It did not address whether the employees of a subsidiary could qualify as employees of a parent company under the FCA.  In dicta, the Sixth Circuit noted that the 2009 amendments to the FCA which added the words "contractor" and "agent" were intended to extend FCA protections to non-employees who "nonetheless have a contractual or agent relationship with an employer."  *Id.* at 1063 (quoting S. Rep. No. 110-507, 110th Cong., 2d Session (Sept. 25, 2008), 2008 WL 4415147, at *26-27).

8

Panowicz has not alleged any such contractual or agent relationship exists between him and Pharos. Moreover, the Sixth Circuit declined to "construe the term 'employee' broadly" and ultimately concluded that the "body of case law and legislative history reinforces our conclusion that the FCA does not extend to non-employee applicants." *Id.* Not only is this precedent not controlling, but it adds little to the present case. Panowicz has not adequately pleaded that he was an actual employee of anyone but Charter.

### 2. Joint Employer, Integrated Enterprise, or Alter Ego

Panowicz alternatively argues that Pharos qualifies as his employer under an integrated-enterprise, joint-employer, or alter-ego theory. This argument fares no better. When the Court "is asked to disregard the separate and distinct form of legal entities, the standards are narrow and rigorous, imposing a presumption of corporate separateness." *Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014); *see also Brown v. Fred's, Inc.*, 494 F.3d 736, 739 (8th Cir. 2007) (explaining that there is a "strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances.") (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993)). A parent company is generally not liable for the misconduct of its subsidiaries and separate corporate entities should only be disregarded "when there is some abuse of the privilege to operate as separate corporations to the detriment of a third party." *Robinson v. Terex Corp.*, 439 F.3d 465, 468 (8th Cir. 2006).

In those extraordinary circumstances, two separate entities may be "so intertwined that they can be considered the single employer of the charging party." *Davis*, 765 F.3d at 827. The Eighth Circuit has not addressed the issue of whether an entity can be held liable under the FCA or NWPCA as an integrated employer, but it has considered the integrated-employer test in other contexts. *See, e.g., Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391 (8th Cir. 1977) (applying the test to determine whether two employers may be joined together for an action under Title VII of the Civil Rights Act ("Title VII")); *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 793-94 (8th Cir. 2009) (applying the test to

9

claims under Title VII and the Minnesota Human Rights Act); *Davis*, 765 F.3d at 827 (applying the test to a NFEPA claim).

The integrated-enterprise test consists of four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Davis*, 765 F.3d at 827 (citing *Baker*, 560 F.2d at 391-92). No single factor is controlling. *Baker*, 560 F.2d at 392. Nor do all of them need to be present. *Iowa Express Distrib., Inc. v. NLRB*, 739 F.2d 1305, 1310 (8th Cir. 1984) (noting that integrated-employer status under the four factors is "a factual question that ultimately depends upon all the circumstances of the individual case.").

Nevertheless, the strong presumption of corporate separateness may only be overcome if (1) "the parent company so dominates the subsidiary's operations that the two are therefore one employer" or (2) "the parent company is linked to the alleged discriminatory action because it controls 'individual employment decisions.'" *Brown*, 494 F.3d at 739 (quoting *Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1268 (8th Cir. 1987)). The four-factor test from *Baker* is used to determine "the 'parental domination' standard set forth in *Brown*." *Sandoval*, 578 F.3d at 796.[6]

The alter-ego doctrine is conceptually distinct from the integrated-enterprise analysis but also asks the Court to consider whether one entity dominates another. It "focuses on whether one business entity should be held" to the obligations of another entity. *Iowa Express*, 739 F.2d at 1310. The question often arises when a successor employer attempts to avoid the obligations of its predecessor. *See, e.g.*, *Greater Kansas City Laborers Pension Fund v. Super. Gen. Contractors, Inc.*, 104 F.3d 1050 (8th Cir. 1997) (considering whether a successor employer was the alter ego of its predecessor and thus

---

[6]It does not appear that Nebraska law has a distinct integrated-enterprise or joint-employer test. When the Nebraska Supreme Court has applied the tests, it has done so in cases involving federal law. *See, e.g.*, *Pierce v. Landmark Mgt. Group, Inc.*, 880 N.W.2d 885, 900-01 (Neb. 2016) (applying the four factors in an FMLA case).

10

liable for its predecessor's agreements under ERISA).  It appears the Eighth Circuit has not addressed the alter-ego theory under the FCA, but under corporate law, one entity may be the alter ego of another entity if it "(1) is controlled by another to the extent that it has independent existence in form only and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud." *Id.* at 1055; *see also In re B.J. McAdams, Inc.*, 66 F.3d 931, 937 (8th Cir. 1995).  Unlike the integrated-enterprise test which does not consider a company's motive in operating jointly, in the Eighth Circuit, the entity's intent to commit a wrong or avoid obligations is crucial to the alter-ego analysis, *Iowa Express*, 739 F.2d at 1311, potentially making it an even higher bar to meet than the integrated-enterprise test.

Under Nebraska law, the corporate entity may only be disregarded "where necessary to prevent fraud or other injustice." *S. Lumber & Coal Co. v. M.P. Olson Real Est. and Const. Co., Inc.*, 426 N.W.2d 504, 508 (Neb. 1988) (quoting *J.L. Brock Bldrs., Inc. v. Dahlbeck*, 391 N.W.2d 110, 113 (Neb. 1986); *see also*, *George v. Board of Education*, 313 N.W.2d 259, 261 (Neb. 1981) (noting that "corporate identity is disregarded only where the corporation has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another."). "Some of the factors which are relevant in determining to disregard the corporate entity are:

> (1) Grossly inadequate capitalization; (2) Insolvency of the debtor corporation at the time the debt is incurred; (3) Diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses; and (4) The fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity."

*U. S. Nat. Bank of Omaha v. Rupe*, 296 N.W.2d 474, 477 (Neb. 1980).

Finally, the Eighth Circuit has not addressed the joint-employer doctrine in the context of the FCA or NWPCA either.  This is likely because the Eighth Circuit applies the same four factors used in an integrated-enterprise analysis to a joint-employer relationship.

11

*See Pulitzer Publ'g. Co. v. NLRB*, 618 F.2d 1275, 1279 (8th Cir. 1980); *Misc. Drivers and Helpers Union, Local No. 610 v. NLRB*, 624 F.2d 831, 833 (8th Cir. 1980). Thus, the four *Baker* factors must be evaluated to determine whether Pharos and Charter operated as joint employers or an integrated enterprise.

Viewing the factual allegations in the light most favorable to Panowicz, the Court concludes that he has not stated a claim that Pharos qualifies as his employer under any legal theory. Panowicz has not pleaded any facts alleging interrelation of operations. Pharos's principal place of business is in Brentwood, Tennessee. Charter's principal places of business are in California and Nebraska. In addition to not sharing headquarters, Panowicz does not plead that they share a human-resources department or any other significant resource. Panowicz also pleads that they have different purposes and functions: Charter is a home healthcare company while Pharos is a private equity firm.

Panowicz does not adequately plead any common management. His only relevant allegation is that three Pharos partners sit on Charter's board of directors and that Larkin *was* an employee of Pharos "at the time" Pharos acquired a majority interest in Charter. Panowicz does not allege that Larkin remains a Pharos employee (let alone officer), nor does he allege Pharos and Charter shared common officers. Panowicz makes broad statements that Pharos provided Charter with "ongoing support and counsel" through "active board participation." It is not clear to the Court how this corporate-speak goes beyond what a controlling shareholder and active board member would normally do. And although Panowicz argues he "personally experienced" Pharos's control over Charter's operational, financial, and human resource decisions, he fails to provide any supporting allegations.

Panowicz also fails to allege any entity other than Charter made the decision to terminate his employment. By his own admission, his employment was terminated by Charter via its CEO, Larkin. He even alleges that Larkin terminated him mid-conversation—without consulting anyone else—and that Larkin admitted to Panowicz he

had not planned to terminate him that day.  But later in his brief opposing dismissal, Panowicz asks the Court to infer that Larkin discussed plans to terminate him "with the Board, and by extension Pharos" based solely on the fact that Panowicz raised concerns about billing fraud to Larkin the month prior.  And after making this inference, Panowicz reasons, the Court may also infer Larkin discussed his termination with Pharos.  This argument seems speculative at best and arguably contradicts the version of events in his complaint.  Rule 12(b)(6) requires the Court take Panowicz's factual allegations as true, not to stack inference upon inference.

In sum, Panowicz has not alleged sufficient facts to allow the Court to draw a reasonable inference that Pharos was a joint employer or an integrated enterprise with Charter.  See *Pulitzer Publ'g*, 618 F.2d at 1279.  Nor has Panowicz pleaded any facts that Pharos's alleged domination of Charter was due to an unlawful motive, as required by the alter-ego theory.  See *McAdams*, 66 F.3d at 937.  Because Panowicz has not alleged sufficient facts to plausibly claim he was an employee of Pharos, he has not properly stated a claim under the FCA or NWPCA, and the Court does not need to conclude whether Panowicz successfully pleaded the other elements of those claims.

> B.     **Informal Request for Leave to Amend**

In his brief in opposition, Panowicz alternatively asks for leave to amend his complaint under Federal Rule of Civil Procedure (15)(a) should the Court determine it does not state a claim upon which relief can be granted.  This passing request is not a proper motion to amend.  See, e.g. *Wolgin v. Simon*, 722 F.2d 389, 394 (8th Cir. 1983) (concluding that a request for leave to amend in an opposition brief to a motion to dismiss should not "be construed as a motion for leave to amend").  Panowicz does not formally move for leave to amend his complaint a second time as required by Federal Rule of Civil Procedure 7(b)(1) nor does he attach a "copy of the proposed amended pleading that clearly identifies" and specifically states "the proposed amendments" as required by Nebraska Civil Rule 15.1(a).  The only addition Panowicz suggests adding is "an allegation that

13

Pharos and Charter employ 15 or more employees" to his NFEPA claim. That would not change the outcome of this motion, as he voluntarily dismisses his NFEPA claim against Pharos.

Because Panowicz has neither filed a proper motion nor attached a proposed amended complaint, his informal request for leave to amend is denied. For these reasons,

IT IS ORDERED:

1. Defendants Pharos Capital Group, LLC; Pharos Capital Partners III, LP; Pharos Capital Partners III-A, LP; Pharos Capital Partners GP III, LLC; and Pharos Capital Partners GP III-A, LLC's Motion to Dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted (Filing No. 43) is granted.

2. The Pharos defendants are dismissed as parties to this action.

Dated this 15th day of October 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge